UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FELIX L. CUEVAS and LUIS VARGAS, )
       Plaintiffs, )
        )
    v. )    C.A. No. 11-10884-WGY
        )
PAUL DiPAULO, ET AL., )
       Defendants. )
        )

## MEMORANDUM AND ORDER

YOUNG, D.J.

On May 16, 2011, Plaintiff Felix L. Cuevas ("Cuevas"), a prisoner in custody at the Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, and Co-Plaintiff Luz Vargas ("Vargas"), a resident of Leominster, MA, filed a handwritten Complaint pursuant to 42 U.S.C. § 1983 against a number of state prison officials and prison guards.[1]

Cuevas alleges that on or about May 6, 2011, he was placed in segregation for allegedly making threats on the phone to an unknown person. His phone number access pin number has been deliberately deactivated to prevent him from contacting his attorneys.[2] Cuevas further contends that his outgoing mail has been intercepted and destroyed, including some of his lawsuits.[3] He claims that on May 6, 2011, he was threatened by IPS Moralez that if any lawsuits

---

[1] The Defendants include: (1) Thomas Dickhaut, SBCC Superintendent; (2) Anthony Mendonsa, Deputy Superintendent of SBCC; (3) Inner Perimeter Security ("IPS") guard Melendez; (4) IPS IPS Ayala; (5) IPS Morales; (6) IPS Robles; and (7) -(9) IPS John Does. Some of these Defendants are also named in a suit filed by Plaintiff Felix Cuevas on May 11, 2011. See Cuevas, et al. v. DiPaulo, et al., C.A. 11-10869-WGY.

[2] Cuevas is a frequent filer in this Court. Several of his allegations concerning his conditions of confinement have been raised or referenced in other civil litigation, and, most recently, in connection with Cuevas, et al. v. DiPaulo, C.A. 11-10869-WGY.

[3] Cuevas claims that because he has been denied library access, stamps, phone access, and attorney access, and because his outgoing mail has been intercepted by the Defendants and

issued against him, he would inform other gang members that Cuevas was a law enforcement officer in the past, thus putting his life in danger.

On May 8, 2011, Cuevas spoke with Defendants Dickhaut and Mendonsa concerning these allegations, but no rectifying action was taken. He was told that his pin number would stay disconnected for the remainder of his sentence (180 days) and that he would not be able to contact the Court or his attorneys during that time.

Cuevas further contends that he was informed by a correctional officer that IPS Officers bragged about keeping him in segregation for filing lawsuits against them, and that they will inform other inmates of his prior law enforcement position in Puerto Rico.

On May 11, 2011, Co-Plaintiff Vargas went to SBCC to visit Cuevas, and was forced into a confined room and questioned by the Defendants against her will. Defendants told her that she would be banned from the prison and her employer would be notified that her boyfriend was currently serving time, unless she filed a frivolous report against Cuevas. Vargas refused to do this and was banned from visiting Cuevas.

On May 12, 2011, Vargas received a threatening call from IPS guards Morales, Ayala, and Mendonsa, and also harassed her at her work place for two hours. Vargas denies she was threatened by Cuevas and stated that they were planning to marry this year. The same day, Vargas received a call from an unknown police officer threatening her to make statements against Cuevas for allegedly making threats against her. Vargas refused and hung up the phone.

---

destroyed, he has been forced to file the instant Complaint using another inmate's name and prison number in order to access the Court.

Cuevas alleges that his legal documents have been lost/destroyed and that he was threatened on May 13, 2011 that if he filed any more grievances, the IPS team would segregate him and use mace against him and put him in restraints. He believes he is in imminent danger. He asks this Court to Order a monthly status report regarding Cuevas's status until this matter can be heard. He also seeks a Temporary Restraining Order until the Court has the opportunity to hear the entire case in open court. Plaintiffs also seek monetary damages of $900,000.00.

Plaintiffs failed to pay the $350.00 filing fee or file for waivers thereof.

## DISCUSSION

I. The Filing Fee; Apportionment of the Filing Fee Between Plaintiffs

A party bringing a civil action must either (1) pay the $350.00 filing fee, see 28 U.S.C. § 1914(a); or (2) seek leave to proceed without prepayment of the filing fee, see 28 U.S.C. § 1915 (proceedings *in forma pauperis*). Where, as here, Cuevas is a prisoner as defined by 28 U.S.C. § 1915(h), a motion for waiver of prepayment of the filing fee must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).[4]

---

[4]Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status. Based on the information contained in the prison account statement, the Court will direct the appropriate prison official to withdraw an initial partial payment from the plaintiff's account, followed by payments on a monthly basis until the entire each has paid the proportionate share of the $350.00 filing fee. See 28 U.S.C. § 1915(b)(1)-(2). Even if the action is dismissed upon a preliminary screening, see 28 U.S.C. §§ 1915(e)(2), 1915A, plaintiff Cuevas remains obligated to pay the fee, see McGore v. Wrigglesworth, 114 F.3d 601, 607 (6th Cir. 1997) (§ 1915(b)(1) compels the payment of the fee at the moment the complaint is filed).

Where there are multiple plaintiffs in a civil action (as here) it has been the practice of this Court to apportion equally the filing fee between or among all plaintiffs (both in prisoner and non-prisoner cases). See, e.g., Anderson, et.al., v. The Fall River Housing Authority, et al., C.A. 07-10131-GAO; Wickers, et al. v. Sheriff Cousins, et al., C.A. 05-10172-RCL; Gordon v. Maloney, C.A. No. 03-10205-DPW; Matthews v. Allen, C.A. No. 02-11922-RWZ. See also 28 U.S.C. § 1914(a) and (b) (providing for a $350 filing fee for civil actions and providing that the clerk shall collect additional fees only as are prescribed by the Judicial Conference of the United States).

Here, Cuevas and Vargas have failed to pay the filing fee or file applications for waivers thereof. Accordingly, within 21 days of this Procedural Order, Cuevas and Vargas shall each pay $175.00 (the apportioned share of the filing fee) or they shall file separate applications to proceed *in forma pauperis*. Cuevas's application must be accompanied by a certified prison account statement for the six-months preceding the filing of this action.

Failure of the plaintiffs to comply with this directive may result in the dismissal of this action in whole or part. The Clerk shall provide plaintiffs with standard forms Application to Proceed in District Court Without Prepaying Fees or Costs.

The Clerk shall send a copy of this Memorandum and Order to the Treasurer's Office at SBCC in order to facilitate any request made by Cuevas for his certified prison account statement. The Court requests that the Treasurer's Office at SBCC include in the prison account statements Cuevas's average monthly deposits for the six-month period preceding the date the Complaint was filed, as well as the average monthly balance for that same period.

No summonses shall issue pending compliance with the directives contained in this

Memorandum and Order. If and/or when the filing fee issues are resolved, a further Order shall issue.

II.     The Complaint is Subject to Screening

Although Cuevas and Vargas are not proceeding *in forma pauperis* at this time, the Court may screen this action pursuant to 28 U.S.C. § 1915A. Section 1915A authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In connection with this review, the Complaint is construed generously because Cuevas and Vargas are proceeding *pro se*. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000). Even under a broad reading, however, the Complaint presents pleading deficiencies which subject certain claims to dismissal in part for the reasons set forth below.

III.    Failure to Plead Plausible Claims Under Fed. R. Civ. P. 8 as to Some Defendants

Rule 8(a) requires a plaintiff to include in a complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402

5

F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "[']meaningful opportunity to mount a defense.'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)); see Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'" Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Here, the Complaint essentially comprises bald assertions by Cuevas regarding harassment and retaliation by IPS guards Morales, and Ayala, as well as Deputy Superintendent Mendonsa. There are no allegations against IPS guards Melendez, Robles, and John Does 1-3 set forth in the body of the Complaint. Thus, the Complaint fails with respect to those Defendants. With respect to the Defendants Mendonsa and Superintended Dickhaut, the Court will broadly construe this as a claim for the failure to intervene once Cuevas reported the alleged wrongdoings of IPS guards.

Upon resolution of the filing fee, the Court would permit this action to proceed against Defendants Dickhaut, Mendonsa, Ayala, and Morales only, unless Plaintiffs demonstrate good cause, within 42 days of the date of this Memorandum and Order, why the claims against all others named Defendants should not be dismissed. The Court will not require Plaintiffs to file an Amended Complaint; should the case proceed, the Defendants may file a Motion for a More Definite Statement pursuant to Fed. R. Civ. P. 12(e) if appropriate.

IV.     Cuevas May Not Represent Co-Plaintiff Vargas *Pro Se*

Although 28 U.S.C.§ 1654 permits persons to proceed *pro se*, this provision does not allow unlicenced lay people to represent other *pro se* litigants.  See Feliciano v. DuBois, 846 F. Supp. 1033, 1039 (D. Mass. 1994); Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991).  Additionally, this Court's Local Rules do not provide such authorization.  See District of Massachusetts Local Rule 83.5.3(c), providing that "[a] person who is not a member of the bar of this court, and to whom sections (a) and (b) are not applicable, will be allowed to appear and practice before the court only in his own behalf."  Id.

Although Vargas has signed the Complaint, it appears to this Court that Cuevas seeks to carry the laboring oar in prosecuting this action (as he has done previously in unrelated prisoner litigation.  The parties are hereby advised that each Plaintiff may only litigate his or her claims, and may not prosecute the claims of the other; this Court will not entertain requests for relief where the pleading is not signed by the party seeking the relief.  Joint motions or pleadings signed by both Cuevas and Vargas are permitted; however, Cuevas may not prosecute claims of Vargas, and vice-versa, nor may one party appear at a conference or hearing (telephonically, by video-conference, or otherwise) for the other.  The fact that Cuevas is imprisoned and Vargas is not, does not alter the Court's view that each party may only assert his or her own claims.

The parties are advised that failure to comply with this directive may result in the imposition of sanctions.

As a final note, the Court questions whether Vargas has or will continue to have a *bona fide* intent to prosecute this action *pro se*, given the above ruling.  Should Vargas seek to continue in this action by filing a Motion for Leave to Proceed *in forma pauperis*, the Court will

consider the filing to constitute a representation to the Court that she does, in fact, intend to pursue this action in good faith.

V.      The Request for a Hearing on a Temporary Restraining Order

In the body of the Complaint, Cuevas and Vargas seek generalized emergency relief in the form of a Temporary Restraining Order. No separate motion for relief was filed pursuant to Rule 65 of the Federal Rules of Civil Procedure.

To obtain the extraordinary remedy of preliminary injunctive relief, Cuevas and Vargas must show that: (1) they will suffer irreparable harm absent an injunction; (2) the injury outweighs the harm to the defendants if granted; (3) they are likely to succeed on the merits of the case, and (4) the injunction does not adversely affect the public interest. Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981); see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993) (extending four part preliminary injunction test to temporary restraining orders). To warrant the more extraordinary relief of a temporary restraining order, Cuevas and Vargas must demonstrate that their injury or loss is "immediate and irreparable." Fed. R. Civ. P. 65(b).

As an initial matter, Cuevas and Vargas have not certified their efforts to give notice to the adverse parties regarding their request for immediate injunctive relief. Further, Cuevas and Vargas have not satisfied the filing fee requirements of this Court and therefore are not entitled to any relief until the filing fee issues are resolved.

More importantly, however, this Court cannot find, based on the allegations contained in the Complaint that they are entitled to temporary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, on an *ex parte* basis, nor does this Court find that an emergency

8

hearing on the matter is warranted. Rather, the record would need to be developed further before this Court can assess the merits of Plaintiffs' claims. It would be unfair, however, to require the Defendants to provide an expedited response to the allegations in the Complaint in its current form (thereby, in some respects, permitting Cuevas and Vargas to circumvent the standard notice requirements of Rule 4 of the Federal Rules of Civil Procedure with respect to proper service of process). Without the benefit of a response from the Defendants, the Court cannot find that Plaintiffs have shown a likelihood of success on the merits, nor shown that the harm to the Defendants would not outweigh the harm to him should injunctive relief be granted. Further, the Court cannot find that Plaintiffs have shown that granting the relief requested would not adversely effect the public interest. For all of these reasons, the Court declines to grant *ex parte* relief in any form, nor hold an emergency hearing in this regard. Plaintiffs may seek injunctive relief after a responsive pleading has been filed by the Defendants, if this case is permitted to proceed further.

Accordingly, to the extent Plaintiffs' seek a Temporary Restraining Order (as contained in the Complaint), the request is DENIED.

Notwithstanding the denial of Plaintiffs' request for an emergency Temporary Restraining Order, the Court finds that some action is warranted at this juncture. Of significance in this finding is the fact that in Cuevas's earlier civil action against many of the same Defendants, Judge Saris expressed concern by the allegations relating to Cuevas's segregation without a timely disciplinary hearing. As a result, she directed the Massachusetts Department of Correction ("DOC") to file a Status Report addressing Cuevas's (and his co-inmates') allegations in the Complaint. See Cuevas, et al. v. Dickhaut, et al., C.A. 10-11897-RWZ (Memorandum and

9

Order, Docket No. 6, entered November 23, 2010).[5]  The last Status Report filed by the DOC was January 13, 2011 (Docket No. 27).

In light of the allegations of imminent harm to Cuevas, this Court will request that the DOC file a Status Report within 14 days of the date of this Memorandum and Order, addressing Cuevas's safety allegations.  Additionally, the DOC is requested to provide a Status Report with respect to the visitation issues concerning Vargas's ability to visit Cuevas.

The Clerk shall send a copy of this Memorandum and Order to the DOC's legal counsel at Massachusetts Department of Correction, 70 Franklin Street, Suite 600, Boston, MA 02110, and shall telephonically and/or by e-mail, apprise the Legal Department of this Memorandum.  Based on the Status Report, the Court will decide whether a hearing on plaintiffs' request for emergency injunctive relief is necessary prior to service of process on the Defendants, or whether some other action is warranted.

## CONCLUSION

1. Within 21 days of the date of this Memorandum and Order, Plaintiff Felix Cuevas and Plaintiff Luz Vargas each shall pay the apportioned filing fee ($175.00 each), or each shall file a completed Motion for Leave to Proceed *in forma pauperis*.  Any motion by Plaintiff Cuevas shall be accompanied by a certified prison account statement for the six-month period preceding the filing of the Complaint, failing which, his claims shall be dismissed;

2. The Treasurer's Offices at SBCC is requested provide Plaintiffs Felix Cuevas with his certified prison account statement for the six-month period preceding the filing of the Complaint, including the average six-months balance and average six-month deposits;

3. Plaintiff Felix Cuevas may not represent the interests of Plaintiff Luz Vargas *pro se*, and vice versa; each Plaintiff may prosecute only his or her own claims;

4. To the extent Plaintiffs' seek an Emergency Temporary Restraining Order (as contained

---

[5]That action was later reassigned to Judge Rya W. Zobel.

  in the Complaint), the request is <u>DENIED</u>;

5.  Upon resolution of the filing fee, the Court will permit this action to proceed against Defendants Dickhaut, Mendonsa, Ayala, and Morales only, unless Plaintiffs demonstrate good cause, within 42 days of the date of this Memorandum and Order, why the claims against all others named Defendants should not be dismissed; and

6.  No summonses shall issue pending further Order of the Court.

SO ORDERED.

           /s/ William G. Young
           WILLIAM G. YOUNG
           UNITED STATES DISTRICT JUDGE

DATED: May 23, 2011